IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA GAYLE KIDD, | : | CIVIL ACTION NO. **3:CV-05-1177** |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge Blewitt |
| v. | : | |
| | : | |
| PRUDENTIAL INSURANCE COMPANY | : | |
| of AMERICA, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**I. Background**.

Plaintiff, Linda Gayle Kidd, filed a Complaint in May 2005, in the Court of Common

Pleas of Lackawanna County, Pennsylvania, against Defendant Prudential Insurance Company

of America ("Prudential"), asserting a breach of contract claim and a bad faith claim with respect

to Defendant's denial of Plaintiff's demand for the death benefit for William P. Kidd

("decedent"), under decedent's Prudential term life insurance policy. (Doc. 1, Ex. A). On

June 13, 2005, Defendant filed a Notice of Removal of this action to this Court pursuant to

28 U.S.C. § 1441 and §1332(a)(1), since Plaintiff is a Pennsylvania resident and Defendant is a

New Jersey corporation.[1] (Doc. 1).

---

[1]According to the Complaint, the Plaintiff is a Pennsylvania resident and Prudential is a New Jersey corporation. Plaintiff seeks damages on her Count I breach of contract claim in the amount of $35,000.00 and on her Count II, bad faith claim, she seeks damages in excess of $50,000 plus costs and interest, as well as punitive damages and attorney's fees. (Doc. 1, Ex. A).
28 U.S.C. § 1332(a) gives the District Court diversity jurisdiction where the matter in controversy exceeds $75,000, exclusive of interest and costs.

In her Complaint, Plaintiff alleges that the life insurance policy which Defendant issued to decedent had a death benefit in the amount of $35,000.00.  Plaintiff alleges that Defendant breached the insurance contract and that Defendant acted in bad faith with respect to its denial to pay her decedent's death benefit.  Defendant asserted in its Notice of Removal that the diversity jurisdictional threshold of $75,000 was satisfied since Plaintiff seeks $35,000 on her breach of contract claim and she seeks in excess of $50,000 on her bad faith claim.  We find, in considering the amount sought by Plaintiff with respect to her bad faith claim, that the diversity jurisdictional threshold of $75,000 was satisfied for purposes of § 1332(a).  In our case, the policy's death benefit is alleged to be only $35,000.  However, if Plaintiff were to succeed on her breach of contract and bad faith claims, it is possible that she would receive more than the diversity jurisdictional threshold amount.

Prior to addressing the merits of Defendant's Summary Judgment Motion and Plaintiff's cross-Summary Judgment Motion, we are compelled to discuss whether federal jurisdictional requirements have been met.  The Court in *James v. Electronic Data Systems Corp.*, 1998 WL 404817 * 2 (E.D. Pa.), stated:

> In order to remove a case from state court to the district court, federal jurisdictional requirements must be met.  *Medlin v. Boeing Vertol Co.,*, 620 F.2d 957, 960 (3d Cir. 1980).  It is the responsibility of the district court to inquire, *sua sponte*, into the question of subject matter jurisdiction.  *Id.*  The district court has removal jurisdiction where there is diversity of citizenship among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interests. [FN5] 28 U.S.C. §§ 1332 and 1441 (1994).
>
> > FN5.  28 U.S.C. § 1332(a) provides in pertinent part: "[t]he district courts shall have original jurisdiction

> of all civil actions where the matter in controversy
> exceeds the sum or value of $75,000, exclusive of
> interest and costs, and is between - - (1) citizens of
> different states . . . ."

In the present case, diversity is not questioned.  Rather, at issue, which we raise *sua sponte*, is the damages amount alleged in the Complaint and whether it meets the $75,000 jurisdictional threshold.  We find that it sufficiently does.

In its Notice of Removal, Defendant asserted that this Court has jurisdiction over the case based on diversity jurisdiction, under 28 U.S.C. § 1332 (a)(1), since it is a citizen of New Jersey and Plaintiff is a citizen of Pennsylvania.  (Doc. 1, p. 2).  The Defendant also stated that the amount in controversy exceeds the jurisdictional amount of $75,000.00, because Plaintiff is requesting $35,000 in her breach of contract claim and in excess of $50,000 on her Pennsylvania bad faith claim, along with interest, punitive damages, costs and attorney's fees.  Defendant thus relies, in part, on Plaintiff's bad faith damages claim to support its removal notice and its determination that the jurisdictional threshold amount has been met.

The Court in *The Bachman Co. v. MacDonald*, 173 F. Supp. 2d 318, 322 (E. D. Pa. 2001), stated the removal standard as follows:

> In general, a party is able to remove a civil action filed in state court
> to federal court if the federal court would have had original
> jurisdiction to hear the matter.  *Lumbermans Mut. Cas. Co. v. Fishman*,
> No. 99-0929, 1999 WL 744016, at *1 (E.D. Pa. Sept. 22, 1999)
> (citing 28 U.S.C. § 1441(b) (1999); *Boyer v. Snap-On Tools Corp.*,
> 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085,
> 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)).  Once the case has been
> removed, however, "the federal court may remand if there has
> been a procedural defect in removal."  *Kimmel v. DeGasperi*,
> No. 00-143, 2000 WL 420639, at * 1 (E.D. Pa. Apr. 7, 2000)
> (citing 28 U.S.C. § 1447(c) (West 1994)).  Remand is mandatory

> if the court determines that it lacks federal subject matter jurisdiction. *Id.* (citing 28 U.S.C. § 1447(c) (West 1994)). "When a case is removed from state court, the removing party bears the burden of proving the existence of federal subject matter jurisdiction." *Id.* (citing *Boyer*, 913 F.2d at 111).

"Removal statutes are strictly construed by Courts and all doubts are resolved in favor of remand." *Id.* (Citations omitted).

Further, as the *James* Court stated:

> Initially, the court must look to whether the state court claim was removable on its face. *Sfirakis v. Allstate Insurance Co.*, No. CIV. A. 91-3092, 1991 WL 147482, at *2 (E.D. Pa. July 24, 1991). Where the jurisdictional amount of damages is challenged, the amount alleged by the plaintiff in her complaint controls rather than the amount alleged in the defendant's notice of removal. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

*James, supra* at *2.

In the present case, Plaintiff's pleading on Count I contains a demand of $35,000, and on Count II, a demand in excess of $50,000.00, while the actual loss is alleged to be a total of $35,000.00, together with interest and costs. We find that the Complaint, on its face, does meet the jurisdictional requirement for removal. As stated, Defendant, in its Removal Notice, relied, in part, upon Plaintiff's bad faith claim in making its assessment that the jurisdictional amount has been met in this case. While it is not clear in the present case, even if Plaintiff succeeds, that she will recover more than the amount of her Count I breach of contract claim with respect to her bad faith claim, we are satisfied that the jurisdictional requirement for removal has been met.

4

In any event, since Plaintiff did not move to remand this case to state court, and since discovery is now complete and dispositive motions have been filed by both parties, the Court will not remand this case to state court despite having the authority to do so, *sua sponte*, if appropriate.

The Plaintiff's allegations all relate to the way in which Prudential processed her claim for death benefits under a term life insurance policy which it issued to decedent. In her first Count, the Plaintiff alleges that Prudential breached its insurance contract which it issued to decedent by not paying her claim for decedent's death benefit pursuant to the terms of his life insurance policy. Specifically, the Plaintiff alleges that at the time of decedent's death on May 20, 2003, he had a life insurance policy which was issued him by Prudential and that it was in full force and effect. Plaintiff avers that the policy had a death benefit of $35,000.00, and that she demanded Prudential pay her the death benefit as sole beneficiary under the policy. Plaintiff alleges that Defendant Prudential without cause and in violation of the insurance contract, has refused to pay the death benefit owed to her under the policy. Thus, Plaintiff asserts that Defendant has breached the life insurance contract.

In Count II, Plaintiff asserts that Defendant wrongfully and without reasonable cause denied her demand for the death benefit due and owing under the decedent's life insurance policy. Plaintiff avers that Defendant's agent met with her on May 22, 2003, and advised her that the policy was in order and he accepted her request for decedent's death benefit. Plaintiff alleges that Defendant's agent did not indicate that the policy had lapsed when the agent met with her. Plaintiff avers that after Prudential was informed of decedent's death, it advised

5

Plaintiff that the life insurance policy had lapsed and it returned the portion of the premiums which had been paid and accepted by Prudential.  Plaintiff alleges in her Count II that Defendant acted with bad faith in refusing to pay her claim for death benefits owed under the policy, and she seeks damages pursuant to 42 Pa. C.S.A. §8371.

Defendant filed its Answer to the Complaint with Affirmative Defenses on June 20, 2005. (Doc. 2).

As mentioned, Plaintiff alleges that she sustained damages with respect to her Count I, breach of contract claim, in the amount of $35,000.00.  (Doc. 1, Ex. A).  In her second Count, the Plaintiff alleges that Defendant Prudential acted in bad faith by denying coverage of her claim for the death benefit under decedent's policy with Defendant, since it did not have any reasonable basis to conclude that the policy had lapsed and that she was not entitled to the death benefit  under the policy, in violation of 42 Pa. C.S.A. § 8371.  Defendant asserts that the policy lapsed prior to decedent's death, and that the final premium payment Plaintiff made on the policy was received after the grace period had ended.  Thus, Defendant contends that any obligation by it to pay the death benefit under decedent's policy had terminated before decedent's death.

After discovery in this case ended, and following an extension of the scheduling deadlines, on May 31, 2007, Defendant Prudential filed a Motion for Summary Judgment pursuant to Fed.R. Civ. P. 56, with several exhibits attached (Exs. A-P), with respect to both Counts (Breach of Contract and Bad Faith) in Plaintiff's Complaint. **(Doc. 24)**.  Plaintiff filed her cross-Summary Judgment Motion on June 1, 2007, also with exhibits attached (Exs. A-E).

(**Doc. 26**).  Both Defendant's Motion and Plaintiff's cross-Motion have been briefed by the

parties, and they have opposed each other's Motion.  (Docs. 25, 27, 28, 29, 30 and 31).[2]

As discussed, jurisdiction of this Court is based on diversity pursuant to 28 U.S.C.

§ 1332(a), as Plaintiff resides in Pennsylvania and Defendant is a New Jersey corporation.  (Doc.

1, Ex. A, p. 2).

## II. Undisputed Material Facts.

We find that for the most part, the material facts in this case are undisputed.  Both

parties have incorporated their Statements of Material Facts ("SMF") required by Local Rule

56.1, M.D. Pa., in their respective Summary Judgment Motions. (Doc. 24, ¶'s 1.-41. and Doc.

26, ¶'s 1.-30.).[3]  Also, Plaintiff has responded to Defendant's SMF (Doc. 30, ¶'s 1.-41.) and

Defendant has responded to Plaintiff's SMF. (Doc. 28, ¶'s 1.-30.).  Plaintiff and Defendant have

properly referenced and submitted evidence to support their SMF's.

As stated, both parties have filed their SMF's, which are incorporated in their Summary

Judgment Motions, as required by Local Rule 56.1, M.D. Pa.  (Doc. 24, ¶'s 1.-41. and Doc. 26,

¶'s 1.-30.).  Defendant also properly filed a response to Plaintiff's SMF and Plaintiff filed her

response to Defendant's SMF.  As discussed below, we shall not repeat the SMF's to which both

parties agree, and we shall incorporate them herein by reference.  We first consider

---

[2] The  parties have  consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 14).

[3] We do not consider ¶'s 42.-50. of Defendant's Summary Judgment Motion to be proper SMF's since, as Plaintiff states (Doc. 30, ¶'s 42.-50.) these paragraphs contain legal conclusions and Plaintiff was not required to respond to them.

Defendant's SMF as they preceded the filing of Plaintiff's SMF.

We find that Defendant's SMF's, Doc. 24, ¶'s 1.-6., are substantively admitted by Plaintiff, Doc. 30, ¶'s 1.-6. With respect to Defendant's SMF's, Doc. 24, ¶'s 7.-9., 11.-16., Plaintiff, for the most parts admits these ¶'s but states that there is no evidence that Defendant's Life Claim Rules were communicated to Plaintiff and that Plaintiff denies the dates of payment as recorded are the dates they were mailed to Defendant. (Doc. 30, ¶'s 7.-9., 11.-16.). Plaintiff also states that Defendant's conclusions as to the policy's status in the stated ¶'s are conclusions.

With respect to Defendant's SMF, Doc. 24, ¶ 19., Plaintiff admits that she received Defendant's March 19, 2003 letter. As to what the letter said, we find that the letter speaks for itself. (Doc. 24, Ex. E).

With respect to Defendant's SMF, Doc. 24, ¶ 23., Plaintiff admits that Defendant's Ex. G is a copy of the checking account for the relevant period.

With respect to Defendant's SMF, Doc. 24, ¶ 24., Plaintiff admits that she received Defendant's April 16, 2003 letter. As to what the letter said, we find that the letter speaks for itself. (Doc. 24, Ex. H).

With respect to Defendant's SMF, Doc. 24, ¶ 25., Plaintiff admits that the stated language appeared in Defendant's March 19, 2003 and April 16, 2003 letters. As to what the letters said, we find that the letters speak for themselves. (Doc. 24, Exs. E and H).

Plaintiff admits ¶'s 26., 29., 30., 33. and 34. of Defendant's SMF, Doc. 24. (Doc. 30, p. 7).

With respect to Defendant's SMF, Doc. 24, ¶ 27., Plaintiff admits that she received the Defendant's May 12, 2003 Notice of Lapse.  As to what the Notice said, we find that the Notice speaks for itself.  (Doc. 24, Ex. K).

With respect to Defendant's SMF, Doc. 24, ¶ 31., Plaintiff admits that she mailed a check for two months premiums on May 10, 2003.  As stated, we find that Defendant's April 16, 2003 letter speaks for itself.  (Doc. 24, Ex. H).

As to ¶'s 35.-36. of Defendant's SMF, Doc. 24, we find that Hartranft's deposition testimony speaks for itself.  (Doc. 24, Ex. M, NT 26-27).

Plaintiff admits ¶'s 37., 40. and 41. of Defendant's SMF, Doc. 24.  (Doc. 30, p. 8).

With respect to Defendant's SMF, Doc. 24, ¶ 39., Plaintiff admits that she received the Defendant's May 21, 2003 letter.   As to what the letter said, we find that it speaks for itself. (Doc. 24, Ex. O).

As stated above, we agree with Plaintiff that Defendant's SMF ¶'s 42.-50. are not proper SMF's, and that they are legal arguments and conclusions.  (Doc. 30, pp. 8-9).

We now consider Plaintiff's SMF with respect to her breach of contract claim, Doc. 26, ¶'s. 1.-11.  Defendant's responses to these ¶'s of Plaintiff's SMF are found at Doc. 28, ¶'s 1.-11.

We find that Plaintiff's SMF, Doc. 26, ¶'s 1.-6., are admitted by Defendant , Doc. 28, ¶'s 1.-6.

Since both parties refer to the deposition testimony of the  insurance agent who sold decedent the life insurance policy at issue, Mr. David Hartranft (Doc. 26, ¶'s  7.-8.  and Doc. 24, ¶'s 34.-36.), we will repeat his testimony in part.  Mr. Hartranft testified as follows:

9

A.      As soon as she [Plaintiff] had called me and said her husband [decedent] had passed away.

Q.      And after you did  - - you looked at that, the next person you called was  - - or in connection with this claim the next person you called was somebody in claims?

A.      Customer service, and then they transfer you to claims. I can't call them directly.  And I just called them to be a little excited and, once again, not with glee but just a little excited that  – they always say there's two dates when you start in your business, the starting date and the date you pay your first claim.  This would have been my first claim I paid out on a policy I sold, and so I wanted to make sure there was no way  – I was looking for any way to say that we could pay this claim.

Q.      And do you recall the name of the woman that you spoke to?

A.      No, I do not.

Q.      And do you recall what day of the week this was?

A.      No, I do not.

Q.      And what information   - -

A.      I do recall that it was the day that Mrs. Kidd called me, though, whatever day that was, it was almost immediate that that's what I did.

Q.      And after you spoke to this woman, did you question her as to whether or not this was  - - the information that you were being given was accurate?

A.      Yes, sir.

Q.      And what did she tell you?

A.      She said, Yes, I'm starting the claim now.

Q.      After you spoke to the woman in claims, what did you do next in relation to this policy?

10

A.      I went to the Kidds with a death claim and got the death claim under way.

Q.      And did you have any discussion with Mrs. Kidd about whether or not Prudential was going to pay the claim?

A.      Yes.  I stated that I still can't see how it could be paid.  And my first reaction was that the policy was not active at the time that it had lapsed but someone in claims  - - and I guess I kind of doubted myself at the time.  I was relatively new in the business so I kind of was at the point where I gave everybody more respect than myself.  That had me a little big encouraged, but I told her that it was my observation that I can't see how the policy can get paid.

Q.      But did you tell her that claims had told you the claim would be paid?

A.      Yes, sir.

Q.      And you completed the claim form with her?

A.      Yes.

Q.      And did you take her policy from her at that time?

A.      That would have been the norm.  Whether in this area with the flood, so many people do not have their policies.  We try to get them out of circulation.  So if she had it handy I probably would have taken it but I can't  - - I'm just speculating.  It's the normal procedure to take it but . . .

(Doc. 24, Ex. M, NT 30-32).[4]

According to the testimony of Plaintiff's son (Anthony Kidd), who was present when she

met with Mr. Hartranft, the following occurred:

Q.      What do you recall about Mr. Hartranft meeting with your mother [Plaintiff]?

---

[4]Plaintiff also attaches a copy of Mr. Hartranft's relevant testimony as Doc. 26, Ex. D.

11

A.      He filled out the paperwork with her.  He made a call to  - - I remember him saying that he looked it up in the computer and everything was still  - - the policy was still in effect at that time.  He made a call and they said that the payment  - - or the, I'm sorry, the policy was still in effect at that time, that everything should be a go.

Q.      Did he ever give you any reservation that the policy had lapsed?

A.      Well, my mom had talked to him  - - or I remember something about a March incident on a payment was in question on it, but he said as of that time that the payment was  - - or not the payment but the policy was still in effect.

Q.      Did you ever overhear him say that he believed that this claim would not be paid?

A.      No, no.

(Doc. 26, Ex. C, NT 9-10).

We find that Plaintiff's SMF, Doc. 26, ¶ 9., is admitted by Defendant, Doc. 28, ¶ 9., to the extent that both parties agree that after Plaintiff's meeting with Mr. Hartranft, on May 22, 2003, Plaintiff submitted her claim for death benefits to Defendant, and on June 19, 2003, Defendant informed Plaintiff that the decedent's policy was no longer in effect due to non-payment of the March 9, 2003 premium and that no death benefit was payable on the policy. (*See* Doc. 28, Ex. B).

We find that Plaintiff's SMF, Doc. 26, ¶ 10. is supported by Plaintiff's evidence.   We find that Hartranft's e-mail of June 4, 2004, speaks for itself, and shall quote it below:

DEAR DAN REGARDING MRS. KIDD'S COMPLAINT, THE FIRST TIME MRS. KIDD HAD GOTTEN IN TOUCH WITH ME WAS THE DAY AFTER HER HUSBAND HAD DIED.  WHEN I LOOKED AT MY FOCUS SCREEN THAT DAY I SAW THAT THE PAID TO DATE WAS A DATE QUITE A BIT EARLIER.  THE PAID TO DATE AT THAT TIME WAS

03-09-2003.  THIS MADE ME ALMOST CERTAIN THAT THERE WAS
KNOW (sic) ELIGIBILITY FOR A CLAIM BY BENE, BUT SO I COULD
ASSURE MY CLIENT DID EVERYTHING TO CONFIRM THIS THINKING
I CALLED CLAIMS AND A WOMEN (sic) TOLD ME YES IT WAS A
GOOD CLAIM.  I WAS VERY DOUBTFUL OF THIS AND ASKED HER
TO BE VERY CERTAIN ABOUT HER ANSWER BEFORE I CONVEYED
THIS INFO. BACK TO MY CLIENT, AND SHE AGAIN STATED IT WAS
A GOOD CLAIM AND STARTED THE CLAIM PROCESS.  AT THAT TIME
I MET WITH MY CLIENT AND TOLD THEM THAT ALTHOUGH I DON'T
SEE HOW, AND THAT IT WAS VERY DOUBTFUL WHEN I SAW WHAT
HIS PAID TO DATE WAS, THAT I WAS TOLD THAT IT WAS A CLAIM
THAT WOULD BE PAID.  DAVID A. HARTRANFT.

(Doc. 26, Ex. A, p. 216).

With respect to Plaintiff's SMF, Doc. 26, ¶ 11., since we have quoted the relevant

testimony of Mr. Hartranft above, we shall not repeat it.

Thus, there is no dispute that decedent had a term life insurance policy with Defendant

and that Plaintiff was the sole beneficiary therein.[5]  However, the parties dispute whether the

policy was still in effect at the time of decedent's death or if the policy had lapsed since

premium payments for it ceased on March 9, 2003.  Plaintiff argues that Defendant agreed to

pay her death claim and that this Court should enforce that agreement regardless of the fact that

she did not mail her check to Defendant for the delinquent two months premiums until May

10, 2003, the date that Defendant told her in its April 16, 2003 letter, that the check had to be

received by it in order to reinstate the policy.  Defendant did not receive Plaintiff's check until

May 18, 2003.  (Doc. 24, Ex. I).

---

[5]The record indicates that Mr. Kidd was issued the term life insurance policy by
Defendant on January 9, 1998.  (Doc. 28, Ex. B, Defendant 's June 19, 2003 letter to Plaintiff).

13

The April 16, 2003 letter from Defendant to Plaintiff stated:

> Dear WILLIAM P. KIDD:
>
> We want you to continue to enjoy the valuable security that your Prudential life insurance policy provides. It's a smart way to protect your family. We're concerned because we haven't received your monthly premium payment that was due on March 9, 2003. As a result, your policy 63 485 786 lapsed on April 9, 2003. But, don't worry, you can still reinstate your policy without answering any questions about your health. Please see reverse side for details
>
> Act now to get your full coverage back.
> To reinstate your policy, just mail a check made payable to Prudential for $92.56. This represents the past due payment for March plus the April payment due now. Please note that we must receive your payment by May 10, 2003. (You may disregard this letter if you've already sent your payment).
>
> We hope you'll take this opportunity to reinstate your Prudential life insurance policy. It provides valuable protection against the unexpected. And keep in mind, a new policy may cost you more since premiums increase with age and health status.
>
> If you have any questions, or would like more information, please call our Customer Service Office at (800) 778-2255. We are available Monday through Friday between 8:00 a.m. and Midnight Eastern Time. On Saturday we are available from 8:00 a.m. to 3:00 p.m. Eastern Time. One of our customer service representatives will be happy to help. You may also call your representative, DAVID A. HARTRANFT, at (570) 347-4184.
>
> We value your business and look forward to hearing from you soon.
>
> Sincerely,

> P.S.  We need to receive your premium amount of $92.56 on or before May 10, 2003 to reinstate your policy automatically.  Don't forget to allow adequate mailing time.  Other correspondence, inquiries, and written requests must be sent to: Customer Service Office, PO Box 7390, Philadelphia PA 19101.  We will begin to respond to your communication as of the date it is received at this address.

(Doc. 28, Ex. B).

Plaintiff also argues that Defendant repeatedly accepted premium payments from her outside of the 31-day grace period, *i.e.* 5 times in the 12-month period preceding decedent's death.  (Doc. 26, Ex. E, NT 29-31).   However, Defendant points out that these payments were still within the period of time that Plaintiff could reinstate the policy without evidence of insurability.  Defendant states that it never reinstated the policy after the 62-day period without requiring a reinstatement application.  (Doc. 28, ¶ 28.).

As mentioned,  Defendant and Plaintiff  filed  separate SMF's  in support of their Summary Judgment Motions, as required by Local Rule 56.1, M.D. Pa.  (Docs. 24 & 26).   Both parties have  filed a paragraph-by-paragraph response to the other party's SMF.  (Docs. 28 and 30).  Therefore, to the extent that the parties have  supported their facts in their SMF's by citation to the record, and to the extent the other party admits  them, as detailed above, we will accept them as undisputed.  We shall not reiterate the SMF's we have found to be admitted, and we incorporate the facts contained therein by reference.[6]

---

[6]*See* Local Rule 56.1, M.D. Pa.  However, as stated above, we do not adopt any legal conclusions or non-factual statements in the  SMF's of Plaintiff and Defendant.

Therefore, we accept the stated facts contained in both Defendants' SMF and Plaintiff's SMF as uncontroverted, and we incorporate them herein by reference.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5  (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[7]

## III. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

---

[7]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

**IV.  Discussion.**

This action was filed by Plaintiff in which she  asserted a breach of contract claim and a bad faith claim with respect to Defendant's denial of her demand for the death benefit  under decedent's Prudential term life insurance policy.  (Doc. 1, Ex. A).  As discussed, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a Pennsylvania resident and Defendant is a New Jersey corporation. (Doc. 1, p.  2).[8]

As noted, the parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636 (c)(1).

---

[8]A jury demand was made by the Plaintiff.  (Doc. 1, Ex. A).

In making an insurance policy coverage determination, the Court must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they would fall within the scope of the policy if proven. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa. Super. 55, 59, 639 A. 2d 1208 (1994) (citation omitted).  Further, under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to decide. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citation omitted).[9]

As the Third Circuit has stated:

> [I]n Pennsylvania a court construes ambiguities in an insurance policy strictly against the insurer.  *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d 145, 152 n. 3 (3d Cir. 1998) (*citing Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983)).  Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear policy language . . .  is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it."  *Selko*, 139 F.3d at 152 n. 3 (internal citations and quotation marks omitted).  In construing policy language, courts should consider any special usage "[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense [.]" *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1193 (Pa. 2001)."

*USX Corp. v. Liberty Mut. Ins. Co.*, 444, F.3d 192, 2006 WL 903192 * 4 (3d Cir. 2006).

---

[9]Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Thus, we shall apply Pennsylvania law with respect to the insurance coverage issue as the events in question all occurred in Pennsylvania.

The rules of contract interpretation must be applied in analyzing an insurance policy.  As the Court stated in *State Farm v. Dunleavy*, 197 F. Supp. 2d 183, 186-87 (E.D. Pa. 2001), the following rules govern the interpretation of a policy:

> The interpretation of an insurance policy is governed by the following rules of contract interpretation: 1) terms must be given their ordinary meaning; 2) ambiguous terms should be construed against the insurer; 3) "a term is ambiguous only if 'reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning;' "and 4) the parties' "true intent must be determined not only from the language but from all the surrounding circumstances." *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982 (1986) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389, 392 (1986)); *See also Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 585, 326 A.2d 346 (1974) (citing *Burne v. Franklin Life Insur. Co.*, 451 Pa. 218, 226, 301 A.2d 799 (1973)) ("Furthermore, where the contact is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.").

We shall not, for the most part, repeat the relevant facts since they are detailed in the undisputed SMF's of the parties, nor shall we repeat all of sections of the Defendant's policy in this case as its relevant provisions are referenced in Plaintiff's SMF and in Defendant's SMF.  The policy is also found at Ex. A, Doc. 24.

Based on the evidence in the record now before us, we find that there are no factual issues which must be decided by the jury.  The issues presented herein, as stated, involve whether Mr. Kidd's  policy was still in effect when he died, and whether there was proper reinstatement of the policy prior to his death.   We  find that there are no material facts in dispute with respect to the present issues for jury determination.

A. *Breach of Contract Claim.*

After the May 20, 2003 death of decedent (Doc. 24, Ex. L), decedent's wife, as beneficiary, reported his death to her Prudential insurance agent, Mr. Hartranft on May 21, 2003.  Mr. Hartranft called Defendant's claim department, and the claims representative (Nicole Wilker) informed him that Plaintiff's death benefit claim was payable and the representative said she would start the claim.  We agree with Defendant that its undisputed evidence, *i.e.* Defendant's Premium History, shows that on May 21, 2003, it processed Plaintiff's two-month premium check of $92.56 which she undisputedly mailed to Defendant on May 10, 2003, and Defendant undisputedly received on May 18, 2003.  (Doc. 24, Ex. B and Ex. I).  Subsequently, on May 21, 2003, Defendant sent decedent a letter indicating that his May 10, 2003 premium payment was received by it afer the insurance contract of decedent had lapsed.  The May 21, 2003 letter also provided as follows:

> We received your recent premium payment.
> Unfortunately, it didn't reach us until after your contract
> had lapsed.
>
> As a result, we're returning your payment of $92.56.  Our
> check for that amount is enclosed.
>
> If you act now, you may be able to restore this valuable
> insurance protection!  We value your business and hope
> we can continue to serve you.
>
> It's easy to apply for reinstatement.  Just complete the
> enclosed form.  Send it to us with the coupon for the
> current premium, and your payment of $138.84.  This
> amount represents the past due payment plus the May 9
> premium now due.

> You can use the enclosed check to make the payment.
> Just write 'pay to Prudential' above your endorsement.

(Doc. 24, Ex. O and Doc. 28, Ex. B).

Plaintiff undisputedly received this letter on May 24, 2003, with a refund check.   (Doc. 30, ¶'s 39. and 41.).[10]  Thus, at this time, decedent had to apply for reinstatement of the policy by completing the enclosed form and by sending it to Defendant with the coupon for the current premium and a check for $138.84.

On May 22, 2003, Mr. Hartranft went to Plaintiff's home in order to fill out the claim paperwork.

We agree with Defendant that the evidence shows that, despite Plaintiff sending Defendant a check for $92.56 for the premium amounts past due on May 10, 2003, this was not enough to reinstate the policy, especially since Defendant did not receive the check until May 18, 2003.  (Doc. 24, Ex. B).  Thus, decedent's policy clearly had lapsed, and the "No Form Reinstatement Period" also had lapsed.  However, as stated, decedent could get reinstatement of the policy by completing the reinstatement  form enclosed with Defendant's May 21, 2003 letter, and by sending it to Defendant with the coupon for the current premium and a check for $138.84.

Plaintiff argues that since Defendant, through its claims representative, already indicated that her death benefit claim would be paid, this somehow created a new agreement between

---

[10]Defendant erroneously indicates in its SMF that Plaintiff received the May 21, 2003 letter on "May 21, 2004".  (Doc. 24, ¶ 41.).

Defendant and Plaintiff, and that this oral representation had the effect of reinstating the lapsed policy.  As Defendant states, the policy clearly provided that the sole manner of reinstating the policy outside of the "No Form Reinstatement Period" was to send Defendant a completed reinstatement application along with evidence of insurability.  Specifically, the policy stated:

> REINSTATEMENT
>
> You may reinstate this contract after the grace period of a past due premium if: the term period has not ended; the premium payment is not past due more than five years; and you prove to us that the insured is insurable for the contract.
>
> You must pay us all premiums in arrears with compound interest; the rate will not exceed 6% per year.

(Doc. 24, Ex. A, p. 12).

The policy also specifically stated that:

> Contract Modifications    Only a Prudential Officer with the rank or title of vice president may agree to modify this contract and then only in writing.

(Doc. 24, Ex. A, p. 7).

Based on the unambiguous language of the insurance contract, there was not permitted an oral modification of the contract by a claims representative.

Moreover, Defendant's letters of March 19, 2003 and April 16, 2003 advised decedent to see the reverse sides of the letters for details about the terms and conditions required to reinstate his policy.  It is undisputed that the reverse sides of the stated letters provided:

> Your contract has lapsed because we have not received the premium due Mar 9, 2003.

We value your business.  We want you to continue as a Prudential policyowner.  The need for insurance protection provided by this contract is probably greater now than it was at the time of purchase.  If you act now, you may be able to restore this valuable insurance protection without a medical examination!

It's easy to apply for reinstatement.  Just complete the enclosed form for us to consider.  Send it to us with your payment of $138.84 by Jun 2, 2003.  This amount represents the past due payments.

. . . . . . . . . . . . . . . . .

If you need any help in applying for reinstatement of this contract, please get in touch with your Prudential representative or the office shown above.

(Doc. 24, ¶ 25.).

As Defendant asserts (Doc. 24, ¶ 45.), any reliance by Plaintiff on the statements of the claims representative that her death benefit would be paid was not justified since the plain language of the policy gave Plaintiff more than adequate notice that the policy could not be modified in this manner.  Therefore, we agree with Defendant that, since the policy had lapsed at the time of decedent's death on May 20, 2003, and Plaintiff did not properly submit to Defendant a reinstatement application along with evidence of insurability as she clearly was instructed to do, there is no merit to Plaintiff's breach of contract claim.

In any event, we find the very recent case of *West v. Lincoln Benefit Life Co.*, 2007 WL 4336192 (3d Cir. 2007), to be similar to our case.  However, in *West*, Defendant insurance company had received the insured's application for reinstatement along with the premium check for the delinquency prior to the insured's death, unlike in our case.  Five days later, the

insured in *West* died, but the insurance company had not yet completed its review of the

reinstatement application of the insured and had not yet decided whether to reinstate his

policy.  Since Defendant insurance company found that insured's policy was not in effect when

he died, the company denied his wife's death benefit claim and refunded her the delinquency

premium amount which decedent had paid along with his reinstatement application.  In our

case, there is no dispute that decedent failed to complete a reinstatement application before he

died.  Thus, based upon the *West* case, our decedent's policy was not in effect when he died.

        The facts of *West,* as well as the facts of our case, involve the area of insurance law

dealing with reinstatement of life insurance policies that have lapsed.  Since the *West* Court

recently discussed this area of insurance law, we will quote it herein.

        The Court in *West* stated:

> The statute requires that all premiums may be paid in advance,
> § 510(a), and if a premium is not received when due, the
> insured is entitled to a grace period in which to pay, § 510(b).
> If an insured does not pay within the grace period and the policy
> lapses, § 510(k) governs the rights and obligations of the insured
> after lapse of a policy, should the insure wish to apply for
> reinstatement:
>
>> [T]he holder of a policy shall be entitled to have the
>> policy reinstated, upon written application therefor,
>> [1] at any time within three years from the date of default
>> in premium payments, unless the policy has been duly
>> surrendered or the extension period expired, [2] upon the
>> production of evidence of insurability satisfactory to the
>> company,  . . . [3] payment of all overdue premiums
>> with interest at a rate to be specified in the policy . . .
>> and [4] the payment of any other indebtedness to the
>> company upon said policy with interest . . .

2007 WL 4336192, *4.

The *West* Court also stated:

> The conjunctive phrasing of § 510(k) makes it clear that
> each requirement must be satisfied  - - mere payment
> of overdue premiums is not sufficient to effect
> reinstatement.  *Fisher v. Am. Nat'l Ins. Co.,*, 241 F.2d
> 175, 177 (3d Cir. 1957); *Sykes v. United Ins. Co.*, 167
> Pa. Super. 624, 76 A.2d 227, 229 (Pa.Super.Ct. 1950);
> *Selby v. Equitable Beneficial Mut. Life Ins. Co.*, 143
> Pa.Super. 131, 17 A.2d 696, 697 (Pa.Super.Ct. 1941);
> *Peters v. Colonial Life Ins. Co. of Am.*, 128 Pa.Super. 21,
> 193 A. 460, 463 (Pa.Super.Ct. 1937); *Stager v. Fed.Life
> Ins. Co.*, 125 Pa.Super. 68, 189 A. 776, 778
> (Pa.Super.Ct. 1937); *Fishmen v. Eureka-Md. Assurance
> Corp.*, 12 Pa.Super. 490, 183 A. 98, 102 (Pa.Super.Ct.
> 1936); Franklin L. Best, Jr., Pennsylvania Insurance Law
> § 13.7 (3d ed. 2005); *see* Russ & Segalla, *supra*, § 33.46
> ("Where two or more conditions to reinstatement exist,
> it is necessary that the insured satisfy all of the
> conditions in order to obtain reinstatement . . .").  The
> insured holds the burden of proving compliance with all
> conditions precedent to reinstatement.  *Riebel v.
> Prudential Ins. Co. of Am.*, 319 Pa. 24, 179 A.447, 448
> (Pa. 1935); *Sykes*, 76 A.2d at 229; *Selby*, 17 A.2d at
> 697-98; *Peters*, 193 A. at 464; *Stager*, 189 A. at 779;
> *Fishman*, 183 A. at 101.

*Id.*

In our case, we find that the undisputed evidence shows that decedent and Plaintiff did

not satisfy all of the conditions precedent necessary to obtain reinstatement of decedent's life

insurance policy with Defendant.  As Defendant points out (Doc. 24, ¶ 42.), the burden is on

the insured to prove "compliance with all conditions precedent to reinstatement."  *Id.*  Since the

undisputed facts of our case show that decedent and Plaintiff did not met the conditions

required to reinstate decedent's life insurance policy with Defendant, his policy was not in

effect when he died, and Defendant did not breach the contract by denying Plaintiff's death

benefit claim.[11]

We concur with Defendant (Doc. 25, p. 17) it was of no moment that it had previously accepted the insured's late payments of policy premiums since those prior late payments were made within the contractual grace period or within the "No Form Reinstatement Period." However, there is no dispute that the insured's last payment *via* the May 10, 2003 check was received by Defendant outside of the grace period and the "No Form Reinstatement Period." (Doc. 24, Ex. B).  Thus, the policy in our case, like the policy in the *West* case, clearly required, before it would be reinstated,  that the insured had to provide evidence of insurability acceptable to Defendant by completing a reinstatement application.  (Doc. 24, Ex. A, p. 12). Indeed, as discussed above, Defendant clearly and repeatedly informed decedent, in its letters of March 19, 2003, April 16, 2003 and May 12, 2003, that he was required to complete a reinstatement application.  (Doc. 24, Exs. E, H and K).  Our decedent had missed the opportunity to reinstate the policy automatically since it is undisputed that Defendant did not

---

[11]Unlike the *West* case, which turned on whether its Plaintiff met the second requirement of reinstatement, *i.e.* evidence of insurability, in our case, Plaintiff Kidd did not meet either condition to obtain reinstatement of decedent's policy.  Indeed, even if our Plaintiff did complete the reinstatement form, which she clearly did not, Plaintiff would still have had to provide evidence of insurability.  As the *West* Court stated:

> The Pennsylvania Supreme Court held that the insurer was clearly
> within its rights to deny reinstatement under the statutory
> predecessor to § 510(k), the insurance policy, and the application
> for reinstatement, when no satisfactory evidence of the
> insurability of the lapsed insured was provided.

2007 WL 4336192, *5.

receive his premium amount of $92.56 (past due for the March 9, 2003 and April 9, 2003 premiums) on or before May 10, 2003, as required.  It is undisputed that Plaintiff did not mail the check out until May 10, 2003, and Defendant's evidence shows that it received this check on May 18, 2003.  However, notwithstanding Plaintiff's undisputed failure to comply with the policy's automatic reinstatement provision, decedent still could have tried to reinstate the policy by applying for reinstatement, which required as conditions that he send in three months past due premiums and complete an application for reinstatement to Defendant by June 2, 2003. (Doc. 24, Ex. K, May 12, 2003 letter of Defendant).

The reverse sides of the March 19, 2003 and April 6, 2003 letters from Defendant to decedent stated:

> **Terms and Conditions**
> Although this policy lapsed at the expiration of its grace period, you can reinstate coverage without evidence of insurability subject to the following conditions:
> * Payment must be made within 31 days after the expiration of your policy's 31-day grace period listed in this letter.
> * Checks and drafts will be accepted subject to collection only.
> * Payment must be received at the Home Office of Prudential **before** the death of the insured.
> * Your ability to reinstate, while the insured is alive, without answering questions about the insured's health is limited by the terms and conditions of this letter.  Prudential is not waiving any contractual rights to require proof of insurability either after the payment date listed in this letter or if the policy should lapse again in the future.

Doc. 24, Ex. E).

Regardless of the fact that decedent was given a clear way in which to apply for reinstatement of his lapsed policy in the May 12, 2003 letter, he chose not to do so.  Rather, Plaintiff testified that since she had sent her May 10, 2003 check with two months premiums before she received the May 12, 2003 letter, she felt she did not have to complete the reinstatement form.  Plaintiff testified as follows:

> Q.   Okay.  Do you recall receiving this [May 12, 2003] letter?
>
> A.   Yes, I do.
>
> Q.   And what was your reaction when you received this letter?
>
> A.   Well, my reaction was I had  - - when they said a payment of three months, I had already paid.  And my records ad my record-keeping and in my mind, I had already paid those months when I received this letter.  They said until June 2nd.  I had sent out the payment, and I'd sent that out on the 10th of May.  That was for April and May.  And I had found the check I had sent for March the 27th.  So in my mind, I was up-to-date when I received  - - you know, I had sent everything out.  They said I could have until June 2nd.  I felt kind of comfortable, it's all in the mail, you know, I'm not  - - I don't have to worry about this.

(Doc. 24, Ex. J, NT 58).

Despite the clear language of the May 12, 2003 letter which indicated that decedent had to apply for reinstatement and not simply send in a check, decedent still did not complete the reinstatement application.  Nor did decedent and Plaintiff call the Prudential agent or Defendant to seek clarification, as the letter advised decedent to do if he had questions.

As stated, the *West* case reiterated that it is the burden on the insured to prove compliance "with all conditions precedent to reinstatement."  2007 WL 4336192, *4 and * 9.  As in *West*, regardless of whether the law governing reinstatement standard applies or whether the law governing the reasonable expectations of the insured applies in our case, the result is the same, and Defendant did not breach the policy by denying Plaintiff's death benefit claim since decedent's policy lapsed and was not properly reinstated prior to his death.  Based on the *West* case, the case law is clear, and Prudential's policy terms were clear that mere payment of the past due premiums by our Plaintiff was not enough to reinstate the policy after her May 10, 2003 check was not timely received by Defendant and it was too late to automatically reinstate the policy.   Our decedent then had to complete a reinstatement application, and Defendant clearly informed him of this requirement in its May 12, 2003 letter.  (Doc. 24, Ex. K).  However, decedent did not comply with the condition required for reinstatement at that time.  As in *West*, "payment the overdue premium was insufficient to effect reinstatement."  *Id.*, *9.  Decedent now had to complete the reinstatement application and send it to Defendant along with a check for past due premiums.  As in *West*, our Plaintiff had to provide proof that decedent was still insurable, which was clearly required by the policy for Defendant to decide if it would reinstate the policy.

Also, as in *West*, it was incumbent on our Plaintiff to provide Defendant with proof that decedent was still insurable.  *Id.*  The *West* Court cited to 40 Pa. C.S.A. §510 (k), stating it required "a lapsed insured to produce 'evidence of insurability satisfactory to the company.'" *Id.*  Decedent was again advised how to request reinstatement of the policy when Defendant sent

him the May 21, 2003 letter.  (Doc. 28, Ex. B).  However, unlike in *West*, our Plaintiff did not

even submit evidence that decedent was still insurable, as did the insured in *West*.  In *West*, the

decedent had completed the reinstatement form and the insurance company was still in the

process of deciding whether the evidence provided by the Wests was sufficient proof of Mr.

West's insurability at the time he died.  Since the Lincoln Life Company in *West* did not yet

decide "whether the statements on the [Wests' reinstatement] application provided satisfactory

evidence of [Mr. West's] insurability," the "reinstatement was not effected because Lincoln

Benefit had not yet accepted [Mr. West's] application."  *Id.*   Unlike the *West* case, our

decedent did not even complete the reinstatement application before he died and had not

offered any evidence to allow Defendant Prudential to determine if he was still insurable.  Thus,

based on *West*, we find that our decedent was not insured at the time of his death on May 20,

2003, and that Defendant Prudential is not contractually obligated to pay Plaintiff her claim for

the death benefits.

Even if we use the law of the reasonable expectations of the insured, as in *West*, our

Plaintiff "may not complain that [her] reasonable expectations were frustrated by policy

limitations which are clear and unambiguous."  *Id.* (citation omitted).  The reinstatement

provision of decedent's life insurance policy with Defendant Prudential, detailed above, as in

*West*, "is clear and unambiguous as to the conditions precedent to reinstatement.  It is also clear

that those conditions were not met."  *Id.*  We find that, based on the undisputed evidence and

Defendant's letters of April 16, 2003, May 12, 2003 and May 21, 2003, Plaintiff did not have a

reasonable expectation of immediate coverage upon payment of the May 10, 2003 check since

30

it was not sent until the day Defendant was to have received it.  Also, Plaintiff did not have a

reasonable expectation of coverage after the automatic reinstatement period expired because

decedent failed to submit the application for reinstatement to Defendant along with the new

payment of past due premiums.  There is no evidence that Defendant misrepresented the

conditions precedent which were required by the policy for reinstatement.  The May 12, 2003

letter clearly advised decedent that the policy had lapsed and that he simply had to complete

the reinstatement form for Defendant's consideration, and submit a payment for three months

past due premiums by June 2, 2003.  This letter clearly indicated that automatic reinstatement

was no longer available, and that the insured now had to complete a reinstatement application

for Defendant's consideration.  Even if decedent did send in the application and his check

before his death on May 20, 2003, according to the *West* case, if Defendant still did not

approve of the application for reinstatement before decedent died, then coverage under the

policy would not have begun again.  Defendant's evidence shows that after decedent failed to

comply with the April 16, 2003 letter and failed to automatically reinstate the policy by not

sending Defendant the $92.56 check for past due premiums by May 10, 2003, it was

unreasonable for Plaintiff to expect that submission of the overdue payment amount alone was

sufficient to reinstate the policy after May 10 without the completion of the reinstatement

application as well.  (*See* May 12, 2003 letter, Doc. 28, Ex. B).  Thus, even though our Plaintiff

sent in the May 10, 2003 premium payment, and even if Defendant accepted it when it was

received on May 18, 2003, at this time another condition precedent to reinstatement was

required, *i.e.* the insured had to complete a reinstatement application form and provide

Defendant with proof of insurability.  Therefore, the other conditions still would not have been met even if the May 10 payment was accepted.  As the *West* Court held, all conditions precedent of reinstatement had to be satisfied, and Plaintiff had the burden to prove that they were met.

Accordingly, we will grant Defendant's Summary Judgment Motion with respect to Plaintiff's breach of contract claim.

### B.  Bad Faith Claim

We also find that the evidence demonstrates no material facts in dispute with respect to Plaintiff's second claim, *i.e.* bad faith claim, especially since we find that Defendant properly denied her death benefit claim under the policy.

In the case of *Krisa v. Equitable Life*, 113 F. Supp. 2d 694, 702-703 (M.D. Pa. 2000), this Court discussed a bad faith claim under Pennsylvania law.[12]  The *Krisa* Court stated as follows:

> Pennsylvania has established a statutory remedy for bad faith on the part
> of insurance companies. Section 8371 of title 42 Pa.C.S.A. provides:
> In an action arising under an insurance policy, if the court finds that the
> insurer has acted in bad faith toward the insured, the court may take all of
> the following actions:
> (1) Award interest on the amount of the claim from the date the claim was
> made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorneys fees against the insurer.
>
> The standard for assessing insurer bad faith under §§ 8371 was recently restated in
> *Keefe v. Prudential Property and Casualty Ins. Co.*, 203 F.3d 218, 225 (3d Cir.2000):
> [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds
> of a policy.' 'For purposes of an action against an insurer for failure to pay a claim,
> such conduct imparts a dishonest purpose and means a breach of a known duty (*i.e.*,

---

[12]Since this is a diversity case, we shall apply Pennsylvania law, as noted above.

good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy;  and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

These two elements--absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis-- must be proven by clear and convincing evidence. *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997). Because "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case,"*Anderson,* 477 U.S. at 254-55, 106 S.Ct. 2505, a proponent of a bad faith claim "must present sufficient evidence such that, if believed, a jury could find bad faith under the clear and convincing standard." *Greco v. The Paul Revere Life Ins. Co.,* No. Civ.A. 97-6317, 1999 WL 95717, *3, (E.D.Pa., Feb.12, 1999).

In this case, we find that the undisputed evidence shows that reinstatement of Mr. Kidd's policy was not effected at the time of his death since he did not submit the completed reinstatement application along with the three past due premiums to Defendant, and since Defendant did not have the application to consider prior to his death.  Thus, since decedent was not insured at the time of his May 20, 2003 death and Defendant Prudential was not contractually obligated to pay Plaintiff's death benefit claim, we find that Defendant is entitled to summary judgment with respect to both of Plaintiff's claims, *i.e.* her breach of contract claim and her bad faith claim.

Thus, the present case presents no  factual disputes on the issues of whether Plaintiff had a reasonable belief that the policy was reinstated and of entitlement to payment of her death benefit claim.

Accordingly, we will grant Defendant's Summary Judgment Motion, and we will deny the Plaintiff's Summary Judgment Motion with respect to both of Plaintiff's claims.

An appropriate Order and Judgment will be issued.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 15, 2008**